United States District Court
Southern District of Texas
**ENTERED**
February 02, 2021
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

CLIFTON LAMAR TAYLOR,           §
TDCJ #02045987,                 §
                                §
            Plaintiff,          §
                                §
v.                              §      CIVIL ACTION NO. H-20-2428
                                §
SANDRA POFFINBARGER, et al.,    §
                                §
            Defendants.         §

## MEMORANDUM OPINION AND ORDER

State inmate Clifton Lamar Taylor (TDCJ #02045987) filed a
Prisoner's Civil Rights Complaint under 42 U.S.C. § 1983
("Complaint") (Docket Entry No. 1-3, pp. 2-33) in the 55th Judicial
District Court for Harris County, Texas, alleging that he was
denied adequate medical care after he sustained a broken foot while
in prison.  The defendants, including Registered Nurse Sandra
Poffinbarger, Nurse Practitioner ("N.P.") Arnel Chan, and
Lieutenant Calvin Simmons, removed the case to this court pursuant
to 28 U.S.C. § 1446(a) (Docket Entry No. 1).  Another defendant,
Dr. Kelly Carmichael, consented to the removal and has appeared in
this case (Docket Entry Nos. 7, 14).

Now pending before the court is Defendant Simmons,
Poffinbarger, and Chan's Motion for Judgment on the Pleadings
Pursuant to Federal Rule of Civil Procedure 12(c) ("Defendants'
Rule 12(c) Motion") (Docket Entry No. 21).  Taylor has filed more

than one response to this motion (Docket Entry Nos. 24, 25). Also pending is Defendant Kelly Carmichael, M.D.'s Motion for Summary Judgment ("Dr. Carmichael's MSJ") (Docket Entry No. 31). Taylor has filed a response to this motion (Docket Entry No. 36). Taylor has also filed a "[Motion for] Summary Judgment" on his claims against Dr. Carmichael ("Plaintiff's MSJ") (Docket Entry No. 28), which he has supplemented several times (Docket Entry Nos. 36, 37, 38, 41). Arguing that Taylor has presented evidence that is both immaterial and inadmissible, Dr. Carmichael has filed Defendant Kelly Carmichael, M.D.'s Motion to Strike Plaintiff's Supplement to His Motion for Summary Judgment [ECF No. 38] ("Dr. Carmichael's Motion to Strike") (Docket Entry No. 39). Taylor has filed a response (Docket Entry No. 44), and Dr. Carmichael has filed additional objections (Docket Entry No. 45). Taylor has replied further with a Motion for Objection/Reconsideration ("Taylor's Objections") (Docket Entry No. 48), regarding a radiology report that he claims is missing from the record. After considering all of the pleadings, exhibits, and the applicable law, the court dismisses this case for the reasons set forth below.

## I. **Background**

Taylor is incarcerated by the Texas Department of Criminal Justice - Correctional Institutions Division ("TDCJ") at the Estelle Unit in Huntsville.[1] Nurse Poffinbarger and N.P. Chan are

---

[1]Complaint, Attachment B to Defendants Simmons, Poffinbarger, and Chan's Joint Notice of Removal ("Notice of Removal"), Docket
(continued...)

health care providers who are employed by the University of Texas
Medical Branch ("UTMB") to treat inmates incarcerated by TDCJ.[2]
Lieutenant Simmons is employed by TDCJ as an officer at the Estelle
Unit, where Nurse Poffinbarger and N.P. Chan are also assigned.[3]
Dr. Carmichael is employed by UTMB at the John Sealy Hospital in
Galveston ("UTMB Hospital"), where he has been a faculty physician
in the Department of Orthopedic Surgery and Rehabilitation since
1999.[4]

Taylor alleges that he broke a bone in his right foot while
playing basketball at the Estelle Unit on May 20, 2019.[5]  Nurse
Poffinbarger treated Taylor in the clinic, where she reportedly
advised Taylor that she did not think his foot was broken.[6]
Although Taylor disagreed and told her that he was in great pain,

---

[1](...continued)
Entry No. 1-3, pp. 2, 4.  For purposes of identification, all page
numbers refer to the pagination imprinted by the court's electronic
filing system, CM/ECF.

[2]Id. at 4.   The defendants ask the court to take judicial
notice that UTMB provides health care services to inmates at
certain TDCJ Units pursuant to a contractual agreement.   See
Defendants' Rule 12(c) Motion, Docket Entry No. 21, p. 5 n.1
(providing a link to the contract).

[3]Complaint, Attachment B to Notice of Removal, Docket Entry
No. 1-3, p. 4.

[4]Affidavit of Kelly Carmichael, M.D. ("Carmichael Affidavit"),
Exhibit D to Dr. Carmichael's MSJ, Docket Entry No. 31-4, p. 2.

[5]Complaint, Attachment B to Notice of Removal, Docket Entry
No. 1-3, p. 5.

[6]Id.

-3-

Nurse Poffinbarger offered no more than an ice pack and Motrin for his discomfort.[7]

On May 22, 2019, Taylor filed a grievance alleging that Nurse Poffinbarger refused to refer him for an x-ray and that she also refused to "wrap" his broken foot or provide crutches.[8]  Taylor added that his foot was very swollen, that he could not walk on it or feel his toes, and that the pain was "unbearable."[9]

Taylor returned to the Estelle Unit clinic on May 30, 2019, where N.P. Chan agreed to send him for an x-ray at the Regional Medical Facility ("RMF") located at the Estelle Unit.[10]  Chan also restricted Taylor to a bottom bunk and dispensed ibuprofen for pain.[11]  Taylor did not return to the clinic to learn the results of that x-ray until 24 days later on June 24, 2019.[12]  Taylor provides the radiologist's report for that x-ray, which disclosed a "mildly displaced intra-articular fracture of the fifth metatarsal base" and "soft tissue swelling" on Taylor's right

---

[7]Id.

[8]Step 1 Grievance No. 2019127618, Exhibit A to Complaint, Docket Entry No. 1-3, p. 9.

[9]Id.

[10]Complaint, Attachment B to Notice of Removal, Docket Entry No. 1-3, p. 6.

[11]Id.

[12]Id.

foot.[13]   The fifth metatarsal is the bone at the base of the smallest toe.[14]  Chan reviewed the results with Taylor and scheduled him for further treatment at the UTMB Hospital in Galveston.[15]

On July 1, 2019, Taylor was treated by Dr. Carmichael at the UTMB Hospital.[16]  Dr. Carmichael ordered another x-ray of Taylor's right foot, which revealed that Taylor had a "fifth metatarsal base fracture" that was "healing."[17]  Dr. Carmichael placed Taylor in a "fracture boot" for ten days, subject to an extension of time if authorized by a "unit provider."[18]

On August 12, 2019, Taylor returned to the UTMB Hospital for a follow-up appointment with Dr. Carmichael.[19]  After reviewing another x-ray Dr. Carmichael reportedly commented that Taylor's foot was all "healed up."[20]  When Taylor replied that he still could

---

[13]Correctional Managed Health Care MD/MLP Chart Review, Exhibit C to Dr. Carmichael's MSJ, Docket Entry No. 31-3, pp. 279-80.

[14]See DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 1143, 1873 (32nd ed. 2012); see also STEDMAN'S MEDICAL DICTIONARY 1195 (28th ed. 2006) (explaining that there are five long metatarsal bones in each foot between the instep and the toes).

[15]Complaint, Attachment B to Notice of Removal, Docket Entry No. 1-3, p. 6.

[16]Id.

[17]UTMB X-Ray Report, Exhibit C to Complaint, Docket Entry No. 1-3, p. 12.

[18]Correctional Managed Health Care HG Offender Medical Pass, Exhibit B to Complaint, Docket Entry No. 1-3, p. 11.

[19]Complaint, Attachment B to Notice of Removal, Docket Entry No. 1-3, p. 6.

[20]Id.

not walk, Dr. Carmichael suggested that he try walking without the fracture boot while assisted by crutches.[21]  Taylor disagreed with Dr. Carmichael's conclusion that his broken foot was healed by filing a grievance.[22]

Taylor was still wearing the fracture boot on September 11, 2019, when Lieutenant Simmons and another officer advised him that he was being moved to the second floor of the prison unit from "one row bottom bunk to two row top bunk."[23]  Taylor informed the officers that he had a broken foot and showed them a "pass" that did not expire until October 25, 2019.[24]  Specifically, Taylor provided the officers with a "Slow Walking" pass that was issued by N.P. Chan on August 26, 2019.[25]  The officers checked "the computer" to see if Taylor had any restrictions on his housing assignment.[26]  Taylor's "Health Summary for Classification" record stated that he

---

[21]Id.

[22]Step 1 Grievance No. 2019173930, Exhibit H to Complaint, Docket Entry No. 1-3, p. 17.

[23]Complaint, Attachment B to Notice of Removal, Docket Entry No. 1-3, p. 6.

[24]Id.

[25]Offender Medical Pass, Exhibit I to Complaint, Docket Entry No. 1-3, p. 19.

[26]Complaint, Attachment B to Notice of Removal, Docket Entry No. 1-3, p. 6 (referencing TDCJ Health Summary for Classification System Inquiry, September 11, 2019, Exhibit J to Complaint, Docket Entry No. 1-3, p. 20).

had "No Restriction" on his housing or bunk assignment.[27]  Finding no restriction that would preclude the new housing assignment, the officers ordered Taylor to move or he would be "gassed."[28]

The day after Taylor moved to his new cell on the second floor, his fracture boot "tripped [him] up" and he fell down the stairs, hurting his knee.[29]  Taylor requested a bottom bunk restriction from the medical department on September 20, 2019, but the physician who responded to his request found that it was not medically necessary.[30]  On October 18, 2019, Taylor fell from the top bunk, hitting his head.[31]  Shortly thereafter, Taylor's restrictions were updated to require a "lower only" bunk assignment.[32]  Taylor blames Lieutenant Simmons for failing to assign him to a "bottom bunk on row one" instead of demanding that he move on September 11, 2019.[33]

_____

[27]TDCJ Health Summary for Classification System Inquiry, September 11, 2019, Exhibit J to Complaint, Docket Entry No. 1-3, p. 20.

[28]Complaint, Attachment B to Notice of Removal, Docket Entry No. 1-3, p. 6.

[29]Id.

[30]Id. (referencing TDCJ Health Services Division Sick Call Request, Exhibit M to Complaint, Docket Entry No. 1-3, p. 24).

[31]Id.

[32]Id. at 7 (referencing TDCJ Health Summary for Classification System Inquiry, October 21, 2019, Exhibit N to Complaint, Docket Entry No. 1-3, p. 27).

[33]Id. at 6.

Taylor contends that he had another x-ray in "mid December 2019," and was told by "a provider" that the bone in his right foot was "still broken though showing a calcium build up."[34]  Taylor's bottom bunk restriction was extended through March 29, 2020.[35]

In "mid February 2020," Taylor returned to the UTMB Hospital in Galveston for another x-ray.[36]  Taylor was told that his foot was "healed" although he purports to be in "tremendous" pain and "can barely walk."[37]

Invoking 42 U.S.C. § 1983, Taylor sues Nurse Poffinbarger, N.P. Chan, Dr. Carmichael, and Lieutenant Simmons in their official and individual capacities.[38]  Taylor alleges that each defendant acted with deliberate indifference to his serious medical needs by denying him adequate medical care and appropriate restrictions in violation of the Eighth Amendment.[39]  He contends further that Nurse Poffinbarger violated his right to Due Process under the Fourteenth Amendment by not sending him to the hospital immediately after he broke the bone in his foot.[40]  Taylor seeks $500,000.00 in compensatory damages and $500,000.00 in punitive damages from each

---

[34]Id. at 7 (emphasis in original).

[35]Id. (referencing "Current Patient Restrictions," Exhibit P to Complaint, Docket Entry No. 1-3, p. 29).

[36]Id.

[37]Id.

[38]Id. at 4-5.

[39]Id. at 7.

[40]Id.

defendant and injunctive relief restricting him to a bottom bunk on the first floor of the prison unit.[41]   Taylor also asks that his x-rays be "reexamined."[42]

Nurse Poffinbarger, N.P. Chan, and Lieutenant Simmons have moved for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure arguing that Taylor fails to state a claim upon which relief can be granted.[43]   Taylor has moved for summary judgment on his claims against Dr. Carmichael insisting that he was mis-diagnosed because his fractured foot has not healed.[44] Dr. Carmichael has filed a separate motion for summary judgment arguing that Taylor cannot show that he was denied adequate medical care and that he is not entitled to prevail.[45]   The parties' pending motions are examined below under the governing standards of review.

## II.   <u>Standards of Review</u>

### A.   The Motion to Dismiss Under Rule 12(c)

Rule 12(c) of the Federal Rules of Civil Procedure provides that "[a]fter the pleadings are closed — but early enough not to delay trial — a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c).   A motion for judgment on the pleadings

---

[41]<u>Id.</u> at 5.

[42]<u>Id.</u>

[43]Defendants' Rule 12(c) Motion, Docket Entry No. 21, pp. 1-19.

[44]Plaintiff's MSJ, Docket Entry No. 28, p. 1.

[45]Dr. Carmichael's MSJ, Docket Entry No. 31, pp. 9-23.

under Rule 12(c) is determined by the same standards applicable to a motion under Rule 12(b)(6), which authorizes dismissal for failure to state a claim upon which relief may be granted. See Phillips v. City of Dallas, 781 F.3d 772, 775 (5th Cir. 2015) (citation omitted); In re Great Lakes Dredge & Dock Co. LLC, 624 F.3d 201, 209-10 (5th Cir. 2010) (citations omitted).

To withstand a motion to dismiss under Rule 12(b)(6), the factual allegations in the complaint "must be enough to raise a right to relief above the speculative level[.]" Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1965 (2007) (citation omitted). If the complaint has not set forth "enough facts to state a claim to relief that is plausible on its face," it must be dismissed. Id. at 1974. In reviewing a motion under Rule 12(b)(6), a court must "'accept[] all well-pleaded facts as true and view[] those facts in the light most favorable to the plaintiff.'" Bustos v. Martini Club, Inc., 599 F.3d 458, 461 (5th Cir. 2010) (citation omitted). However, a reviewing court need not accept as true any "conclusory allegations, unwarranted factual inferences, or legal conclusions." Ferrer v. Chevron Corp., 484 F.3d 776, 780 (5th Cir. 2007) (citation and internal quotation marks omitted). In other words, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (citing Twombly, 127 S. Ct. at 1965).

-10-

The plaintiff has attached numerous exhibits to his Complaint.[46]  Such exhibits are considered part of the Complaint "for all purposes." Fed. R. Civ. P. 10(c).  Thus, the court may consider these exhibits for purposes of the motion to dismiss under Rule 12(b)(6).  See Ferrer, 484 F.3d at 780 ("A written document that is attached to a complaint as an exhibit is considered part of the complaint and may be considered in a 12(b)(6) dismissal proceeding.") (citations omitted).

The plaintiff represents himself in this case.  Courts are required to give a pro se litigant's contentions a liberal construction.  See Erickson v. Pardus, 127 S. Ct. 2197, 2200 (2007) (per curiam) (citation omitted); see also Haines v. Kerner, 92 S. Ct. 594, 595-96 (1972) (per curiam) (noting that allegations in a pro se complaint, however inartfully pleaded, are held to less stringent standards than formal pleadings drafted by lawyers). Even under this lenient standard, pro se litigants are still required to "properly plead sufficient facts that, when liberally construed, state a plausible claim to relief[.]"  E.E.O.C. v. Simbaki, Ltd., 767 F.3d 475, 484 (5th Cir. 2014) (quoting Champion v. United States, 421 F. App'x 418, 423 (5th Cir. 2011); Pickett v. Nunn, 367 F. App'x 536, 537 (5th Cir. 2010)).

B.  **The Motion for Summary Judgment**

Motions for summary judgment are governed by Rule 56 of the Federal Rules of Civil Procedure.  Under this rule a reviewing

---

[46]Complaint, Attachment B to Notice of Removal, Docket Entry No. 1-3, pp. 9-33 (Exhibits A through V).

court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a) (2018); see also Celotex Corp. v. Catrett, 106 S. Ct. 2548, 2552 (1986). A fact is "material" if its resolution in favor of one party might affect the outcome of the suit under governing law. Anderson v. Liberty Lobby, Inc., 106 S. Ct. 2505, 2510 (1986). An issue is "genuine" if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party. Id.

In deciding a summary judgment motion, the reviewing court must view all facts and inferences in the light most favorable to the non-movant and resolve all factual disputes in his favor. See Shah v. VHS San Antonio Partners, L.L.C., --- F.3d ---, 2021 WL 118627, at *2 (5th Cir. Jan. 13, 2021) (citations omitted). If the movant demonstrates an "absence of evidentiary support in the record for the nonmovant's case," the burden shifts to the nonmovant to "come forward with specific facts showing that there is a genuine issue for trial." Sanchez v. Young County, Texas, 866 F.3d 274, 279 (5th Cir. 2017) (citing Cuadra v. Houston Indep. Sch. Dist., 626 F.3d 808, 812 (5th Cir. 2010)).

The non-movant cannot avoid summary judgment by resting on his pleadings or presenting "[c]onclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation." Jones v. Lowndes County, Mississippi,

678 F.3d 344, 348 (5th Cir. 2012) (citation and internal quotation marks omitted); see also Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (a non-movant cannot demonstrate a genuine issue of material fact with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence). Although the plaintiff represents himself, a pro se litigant is not excused from meeting his burden of proof of specifically referring to evidence in the summary judgment record and setting forth facts showing that there is a genuine issue of material fact remaining for trial. See Outley v. Luke & Associates, Inc., 840 F.3d 212, 217 (5th Cir. 2016); see also Bookman v. Shubzda, 945 F. Supp. 999, 1004 (N.D. Tex. 1996) (citing Forsyth v. Barr, 19 F.3d 1527, 1537 (5th Cir. 1994) (citation omitted)).  The court has no obligation under Rule 56 "to sift through the record in search of evidence to support a party's opposition to summary judgment." Adams v. Travelers Indemnity Co. of Connecticut, 465 F.3d 156, 164 (5th Cir. 2006) (quotation omitted).

## III.  Discussion

### A.  Eleventh Amendment Immunity

All of the defendants assert that they are entitled to immunity under the Eleventh Amendment as employees of either TDCJ or UTMB, which are agencies of the State of Texas.[47]  See Tex. Gov't Code § 493.001, et seq.; Tex. Educ. Code § 65.01, et seq.

---

[47]Defendants' Rule 12(c) Motion, Docket Entry No. 21, p. 16; Dr. Carmichael's MSJ, Docket Entry No. 31, pp. 20-21.

Unless expressly waived, the Eleventh Amendment bars an action in federal court by a citizen of a state against his or her own state, including a state agency.  See Will v. Michigan Dep't of State Police, 109 S. Ct. 2304, 2309 (1989).  The Eleventh Amendment also bars a federal action for monetary damages against state officials when the state itself is the real party in interest.  See Pennhurst State School & Hospital v. Halderman, 104 S. Ct. 900, 908-09 (1984).  A suit against a state official in his or her official capacity is considered a suit against the state itself. See Will, 109 S. Ct. at 2312 ("[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office.  As such, it is no different from a suit against the state itself.") (internal citations omitted).

Texas has not waived its Eleventh Amendment immunity and Congress did not abrogate that immunity when it enacted 42 U.S.C. § 1983.  See NiGen Biotech, L.L.C., v. Paxton, 804 F.3d 389, 394 (5th Cir. 2015) (citing Quern v. Jordan, 99 S. Ct. 1139, 1145 (1979)).  Because TDCJ and UTMB are state agencies and therefore immune, officials employed by these agencies are also entitled to immunity from any claim for monetary damages against them in their official capacity.[48]  See Loya v. Texas Dep't of Corrections, 878

_____

[48]The Eleventh Amendment also precludes claims for injunctive relief against the state or a state agency.  See Puerto Rico Aqueduct and Sewer Authority v. Metcalf & Eddy, Inc., 113 S. Ct. 684, 688 (1993) (explaining that the "narrow" exception carved out

(continued...)

-14-

F.2d 860, 861 (5th Cir. 1989) (per curiam) ("[TDCJ's] entitlement
to immunity under the [E]leventh [A]mendment is clearly established
in this circuit."); <u>Oliver v. Scott</u>, 276 F.3d 736, 742 (5th Cir.
2002) ("[T]he Eleventh Amendment bars recovering § 1983 money
damages from TDCJ officers in their official capacity.").   As a
result, Taylor's claims against the defendants in their official
capacity as state employees will be dismissed.

## B.   Qualified Immunity

Nurse Poffinbarger, N.P. Chan, and Lieutenant Simmons have
asserted qualified immunity from liability for claims seeking
monetary relief from them in their individual or personal
capacity.[49]   Public officials acting within the scope of their
authority generally are shielded from civil liability by the
doctrine of qualified immunity.   <u>See Harlow v. Fitzgerald,</u> 102
S. Ct. 2727, 2738 (1982).   Qualified immunity protects "all but the
plainly incompetent or those who knowingly violate the law."
<u>Malley v. Briggs,</u> 106 S. Ct. 1092, 1096 (1986).   A plaintiff

---

[48](...continued)
in <u>Ex parte Young,</u> 28 S. Ct. 441 (1908), applies "only to
prospective relief, does not permit judgments against state
officers declaring that they violated federal law in the past . . .
and has no application in suits against the States and their
agencies, which are barred regardless of the relief sought"
(internal citations omitted)).   Taylor is not entitled to
injunctive relief for reasons discussed further below because he
fails to establish an actionable violation of his civil rights.

[49]Defendants' Rule 12(c) Motion, Docket Entry No. 21, pp. 15-16.

seeking to overcome qualified immunity must show: "(1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." Ashcroft v. al-Kidd, 131 S. Ct. 2074, 2080 (2011) (citation omitted).

### 1.   Nurse Poffinbarger

Taylor alleges that Nurse Poffinbarger violated his constitutional rights by denying him adequate medical care after he injured his foot on May 20, 2019.[50]   Although Taylor alleges that Nurse Poffinbarger violated both the Eighth and the Fourteenth Amendments,[51] the defendants correctly note that claims by convicted felons are governed by the Eighth Amendment.[52]   See Hare v. City of Corinth, Mississippi, 74 F.3d 633, 639 (5th Cir. 1996) (clarifying that the constitutional rights of a convicted state prisoner "spring from the Eighth Amendment's prohibition [against] cruel and unusual punishment," whereas pretrial detainees are protected by the "procedural and substantive due process guarantees of the Fourteenth Amendment").

To establish an actionable claim for the denial of adequate medical care under the Eighth Amendment a prisoner must demonstrate

---

[50]Complaint, Attachment B to Notice of Removal, Docket Entry No. 1-3, pp. 5, 7.

[51]Id. at 7.

[52]Defendants' Rule 12(c) Motion, Docket Entry No. 21, p. 13.

that prison officials acted with "deliberate indifference to a prisoner's serious illness or injury[.]" Estelle v. Gamble, 97 S. Ct. 285, 291 (1976).   A prison official acts with deliberate indifference "only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." Farmer v. Brennan, 114 S. Ct. 1970, 1984 (1994).

The Eighth Amendment deliberate indifference standard is an "extremely high" one to meet. Domino v. Texas Dep't of Criminal Justice, 239 F.3d 752, 756 (5th Cir. 2001).   "Unsuccessful medical treatment, acts of negligence, or medical malpractice do not constitute deliberate indifference, nor does a prisoner's disagreement with his medical treatment, absent exceptional circumstances." Gobert v. Caldwell, 463 F.3d 339, 346 (5th Cir. 2006).   A showing of deliberate indifference under these circumstances requires the prisoner to demonstrate that prison officials "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." Id. (citation and internal quotation marks omitted).

Taylor acknowledges that Nurse Poffinbarger examined him on May 20, 2019, treating him with an ice pack and Motrin for pain because she did not believe that his foot was broken.[53]   Taylor

---

[53]Complaint, Attachment B to Notice of Removal, Docket Entry No. 1-3, pp. 4, 5.   Medical records provided by Dr. Carmichael
(continued...)

contends that she acted with deliberate indifference by not immediately sending him to the UTMB Hospital, ordering an x-ray, or wrapping his foot that day.[54]

To the extent that Taylor disagrees with Nurse Poffinbarger's assessment of his injury or the level of medical care he received, allegations of this sort are insufficient to establish deliberate indifference in violation of the Eighth Amendment. See Gobert, 463 F.3d at 346; see also Estelle, 97 S. Ct. at 293 (observing that whether a particular form of treatment is indicated "is a classic example of a matter for medical judgment" and that a medical decision "does not represent cruel and unusual punishment"). Even if a lapse in professional judgment occurred, any such failure amounts to mere negligence or malpractice, and not a constitutional violation. See Harris v. Hegmann, 198 F.3d 153, 159 (5th Cir. 1999) (citing Mendoza v. Lynaugh, 989 F.2d 191, 195 (5th Cir. 1993)).

Taking all of Taylor's allegations as true, he does not demonstrate that Nurse Poffinbarger refused to treat him or intentionally treated him incorrectly with deliberate indifference

---

[53](...continued) confirm that Nurse Poffinbarger treated Taylor according to a standard for patients presenting with "Musculoskeletal Symptoms" and that she also referred Taylor to be seen by another provider. See Correctional Managed Health Care Nursing Protocol for Musculoskeletal Symptoms, Exhibit C to Dr. Carmichael's MSJ, Docket Entry No. 31-3, pp. 286-91.

[54]Complaint, Attachment B to Notice of Removal, Docket Entry No. 1-3, pp. 4, 5.

to a serious medical condition.  Because Taylor's allegations are
insufficient to overcome qualified immunity, the claims against her
will be dismissed.

    2.  <u>N.P. Chan</u>

Taylor alleges that N.P. Chan violated his rights by denying
him timely medical care for his broken foot and that he also failed
to place appropriate restrictions on his housing.[55]   Taylor
acknowledges that Chan treated him for the first time on May 30,
2019, and agreed to send him to the RMF for an x-ray that was
scheduled for the following day.[56]  Chan also gave him ibuprofen for
pain and placed a restriction on Taylor's housing that limited him
to a bottom bunk.[57]  Taylor does not show that Chan denied him
adequate medical care or appropriate restrictions on May 30, 2019.

Taylor appears to allege that Chan violated his rights by
delaying his access to additional medical care at UTMB Hospital
because Taylor did not return to the clinic to review the results
of his x-ray until 24 days after it was taken.[58]  As a result of
this delay, Taylor was not seen by an orthopedic specialist at UTMB
Hospital until July 1, 2019.[59]

---

[55]<u>Id.</u> at 4, 6.

[56]<u>Id.</u> at 6.

[57]<u>Id.</u>

[58]<u>Id.</u>

[59]<u>Id.</u>

Taylor does not allege facts showing that Chan was responsible
for his delay in returning to the clinic to review the initial
x-ray of his foot.  Taylor does not otherwise allege facts showing
that his condition worsened as the result of the delay or that he
was denied appropriate restrictions by Chan at any time.[60]  As a
result, Taylor has not alleged facts that are sufficient to
overcome Chan's entitlement to qualified immunity.  See Rogers v.
Boatright, 709 F.3d 403, 410 (5th Cir. 2013) (emphasizing that
allegations of delay in medical care only violate the Constitution
"if there has been deliberate indifference that *results in
substantial harm*") (emphasis in original) (quoting Easter v.
Powell, 467 F.3d 459, 464 (5th Cir. 2006)); see also Mendoza v.
Lynaugh, 989 F.2d 191, 193 (5th Cir. 1993).  Therefore, the court
will grant the motion to dismiss Taylor's claims against Chan.

3.   Lieutenant Simmons

Taylor contends that Lieutenant Simmons violated his rights
under the Eighth Amendment by directing him to move to a cell on
the second floor on September 11, 2019.[61]  Taylor contends that

_____

[60]Medical records provided by Dr. Carmichael confirm that
during a visit to the Estelle Unit clinic on May 29, 2019, Chan
imposed several restrictions on Taylor's classification, including
a lower bunk assignment for the next 90 days, expiring on
August 27, 2019.  See Correctional Managed Health Care Clinic Notes
5/29/2019, Exhibit C to Dr. Carmichael's MSJ, Docket Entry
No. 31-3, p. 284.  Exhibits provided by Taylor also show that Chan
issued a "Slow Walking" pass on August 26, 2019.  See Offender
Medical Pass, Exhibit I to Complaint, Docket Entry No. 1-3, p. 19.

[61]Complaint, Attachment B to Notice of Removal, Docket Entry
No. 1-3, pp. 4, 6-7.

Lieutenant Simmons should have assigned him to a cell on the first floor rather than forcing him to move because Simmons knew that Taylor was wearing a fracture boot.[62]   Taylor blames Lieutenant Simmons for placing him in a cell on the second floor and for his subsequent fall down the stairs on September 12, 2019.[63]

Taylor admits that Lieutenant Simmons and the other officer who ordered him to move checked Taylor's classification records, which are updated by medical personnel, "and saw no restriction."[64] The classification record provided by Taylor confirms that he had "No Restriction" on his housing or bunk assignment on September 11, 2019.[65]   Taking Taylor's allegations as true, he does not demonstrate that Lieutenant Simmons acted unreasonably or that he violated Taylor's rights by ordering him to move.   Because Lieutenant Simmons is entitled to qualified immunity, the claims against him will be dismissed.

## C.   Claims Against Dr. Carmichael

Taylor alleges that Dr. Carmichael denied him adequate medical care when he told him that his foot was "healed" and did not update

---

[62]Id. at 6.

[63]Id. at 4, 6.

[64]Id. at 6.

[65]TDCJ Health Summary for Classification System Inquiry, September 11, 2019, Exhibit J to Complaint, Docket Entry No. 1-3, p. 20.

his restrictions.[66]  Dr. Carmichael moves for summary judgment arguing that Taylor cannot show that he was denied adequate care with deliberate indifference or that a constitutional violation occurred.  In support, Dr. Carmichael provides his own affidavit,[67] the relevant medical records,[68] and an affidavit from another orthopedic specialist, Dr. Mark A. Foreman ("Foreman Affidavit"),[69] who reviewed the medical records of treatment provided to Taylor and concludes that the Complaint is "frivolous."[70]

The medical records confirm that Dr. Carmichael first examined Taylor at the UTMB Hospital on July 1, 2019.[71]  During that appointment Dr. Carmichael reviewed the initial x-ray that was taken of Taylor's right foot on May 30, 2019.[72]  The radiologist's report associated with that x-ray contained the following findings:

---

[66]Complaint, Attachment B to Notice of Removal, Docket Entry No. 1-3, p. 4.

[67]Carmichael Affidavit, Exhibit D to Dr. Carmichael's MSJ, Docket Entry No. 31-4, pp. 2-3.

[68]UTMB Hospital Galveston Medical Records, Exhibit B to Dr. Carmichael's MSJ, Docket Entry No. 31-2, pp. 1-90; TDCJ Medical Records, Exhibit C to Dr. Carmichael's MSJ, Docket Entry No. 31-3, pp. 1-297.

[69]Affidavit of Mark A. Foreman, MD ("Foreman Affidavit"), Exhibit A to Dr. Carmichael's MSJ, Docket Entry No. 31-1, pp. 2-4.

[70]Id. at 4.

[71]UTMB Health Admission 7/1/2019, Exhibit B to Dr. Carmichael's MSJ, Docket Entry No. 31-2, p. 11.

[72]UTMB Health 5/30/2019, Exhibit B to Dr. Carmichael's MSJ, Docket Entry No. 31-2, p. 5.

> A mildly displaced intra-articular fracture of the fifth
> metatarsal base is seen.   Lateral foot soft tissue
> swelling is present.[73]

The radiologist interpreting that x-ray made the following impression or assessment:  "Fifth metatarsal base fracture."[74]

Dr. Carmichael ordered another x-ray during Taylor's appointment on July 1, 2019.[75]  After reviewing Taylor's previous x-ray, the radiologist made the following findings:

> Increased callus formation is seen about the fifth
> metatarsal base fracture.  Mild soft tissue swelling
> persists.  Alignment is unchanged.  There is disuse
> osteopenia.[76]

Based on these findings the radiologist had the following impression of the x-ray:   "Healing fifth metatarsal base fracture."[77]  After considering these results, Dr. Carmichael and the resident he was supervising recommended a plan of care that included:  (1) a fracture boot with crutches; (2) activity modification to minimize pain; (3) NSAIDs for pain; (4) heat therapy for muscular pain; (5) follow-up in 4-6 weeks for another x-ray.[78]

---

[73]Correctional Managed Health Care Clinic Notes, Exhibit C to Dr. Carmichael's MSJ, Docket Entry No. 31-3, p. 278.

[74]Id.

[75]UTMB Health 7/1/2019, Exhibit B to Dr. Carmichael's MSJ, Docket Entry No. 31-2, p. 17; UTMB Health Office Notes 7/1/2019, Exhibit B to Dr. Carmichael's MSJ, Docket Entry No. 31-2, p. 26.

[76]UTMB Health Radiology Results 7/1/2019, Exhibit B to Dr. Carmichael's MSJ, Docket Entry No. 31-2, p. 21.

[77]Id.

[78]UTMB Health Office Notes 7/1/2019, Exhibit B to Dr. Carmichael's MSJ, Docket Entry No. 31-2, p. 26.

Dr. Carmichael also recommended restricting Taylor's housing to "bottom bunk/row."[79]

Dr. Carmichael saw Taylor again for a follow-up appointment on August 12, 2019, and he ordered a new x-ray.[80] A radiologist reviewed that x-ray in comparison to the one taken on July 1, 2019, and made the following findings:

> There is mild interval increased callus formation at the previously noted fifth metatarsal base fracture, but with persistent fracture lucency.
>
> A remote medial malleolus avulsion fracture is again identified.[81]

Based on these findings the radiologist had the following impression of the x-ray, concluding that it showed "[m]ild interval healing of the fifth metatarsal base fracture with persistent fracture lucency."[82] During the appointment Dr. Carmichael observed that Taylor was wearing a fracture boot and was able to walk, but with some pain.[83] After reviewing the radiologist's report, Dr. Carmichael determined that Taylor had a "healing 5th base [metatarsal] fracture" and prescribed the following plan of care: (1) crutches for the next three weeks; (2) no strenuous activities for the next four weeks; (3) follow up with the UTMB Hospital

---

[79]Id.

[80]UTMB Health Admission 8/12/2019, Exhibit B to Dr. Carmichael's MSJ, Docket Entry No. 31-2, p. 28.

[81]UTMB Health Radiology Results 8/12/2019, Exhibit B to Dr. Carmichael's MSJ, Docket Entry No. 31-2, p. 43.

[82]Id.

[83]UTMB Health Office Notes 8/12/2019, Exhibit B to Dr. Carmichael's MSJ, Docket Entry No. 31-2, p. 45.

Galveston "as needed."[84]  Dr. Carmichael did not recommend any other restrictions.[85]

When Taylor returned to the Estelle Unit, N.P. Chan imposed restrictions consistent with Dr. Carmichael's plan of care by limiting Taylor to "Sedentary Work Only."[86]  Taylor requested a bottom bunk restriction on September 13, 2019, but a physician rejected his request noting that the fracture to his right foot occurred four months ago in May and that there was "no medical necessity to continue [a] low bunk [restriction]."[87]

Although Dr. Carmichael did not treat Taylor again, Dr. Foreman notes that Taylor returned to the UTMB Hospital for additional x-rays on November 7, 2019, and February 13, 2020.[88] According to Dr. Foreman, both x-rays showed that Taylor's fracture had healed.[89]  The medical records support this conclusion.[90]

---

[84]Id. at 47.

[85]Id.

[86]Patient Restriction History, Exhibit C to Dr. Carmichael's MSJ, Docket Entry No. 31-3, p. 292.

[87]TDCJ Health Services Division Sick Call Request - Medical Reply, Exhibit M to Complaint, Docket Entry No. 1-3, p. 24; see also TDCJ Inmate Request to Official, Exhibit C to Dr. Carmichael's MSJ, Docket Entry No. 31-3, p. 228 (rejecting a similar request from Taylor, noting that his fracture was "healed" and there was "no medical necessity for [a] low bunk").

[88]Foreman Affidavit, Exhibit A to Dr. Carmichael's MSJ, Docket Entry No. 31-1, p. 4.

[89]Id.

[90]UTMB Health Radiology Results 11/07/2019, Exhibit B to Dr. Carmichael's MSJ, Docket Entry No. 31-2, p. 67; UTMB Health Radiology Results 2/13/2020, Exhibit B to Dr. Carmichael's MSJ, Docket Entry No. 31-2, p. 89.

Dr. Foreman further concludes that Dr. Carmichael treated him appropriately.[91]

Taylor disagrees. Noting that the radiologist report for August 12, 2019, describes his fracture as "healing," not "healed," Taylor insists that he was mis-diagnosed by Dr. Carmichael.[92] In support of this argument Taylor contends that another x-ray taken at the Estelle Unit RMF on September 3, 2020, is proof that his foot remains broken.[93] Dr. Carmichael objects to Taylor's opinion as a lay person untrained in medicine.[94]

Taylor does not provide any records associated with the x-ray that he claims was taken on September 3, 2020, and he does not point to its existence in the record.[95] Viewing all of the evidence

---

[91]Foreman Affidavit, Exhibit A to Dr. Carmichael's MSJ, Docket Entry No. 31-1, p. 4.

[92]Plaintiff's MSJ, Docket Entry No. 28, p. 1; In Supplement of Plaintiff Summary Judgment, Docket Entry No. 36, p. 1 (pointing to medical records).

[93]Plaintiff's MSJ, Docket Entry No. 28, p. 1.

[94]Dr. Carmichael's Motion to Strike, Docket Entry No. 39, pp. 1-3; see also Defendant Kelly Carmichael, M.D.'s Objection to Plaintiff's Opposition to Motion to Strike MSJ Supplements [ECF No. 44], Docket Entry No. 45, pp. 1-4. Dr. Carmichael's objections are well taken. Therefore, the Motion to Strike will be granted.

[95]Dr. Carmichael has provided hundreds of pages of medical records for the time period between January 1, 2019, and the date of his summary judgment motion, which was submitted on September 24, 2020. See Dr. Carmichael's MSJ, Docket Entry No. 31, p. 11; UTMB Hospital Galveston Medical Records, Exhibit B to Dr. Carmichael's MSJ, Docket Entry No. 31-2, pp. 1-90; TDCJ Medical Records, Exhibit C to Dr. Carmichael's MSJ, Docket Entry No. 31-3,
(continued...)

in the light most favorable to Taylor, his arguments are insufficient to show that Dr. Carmichael denied him adequate medical care or that a violation of his constitutional rights occurred.

It is well established that a prisoner's disagreement with a physician's assessment is insufficient to establish deliberate indifference in violation of the Eighth Amendment. See Gobert, 463 F.3d at 346; see also Estelle, 97 S. Ct. at 293 (observing that whether a particular form of treatment is indicated "is a classic example of a matter for medical judgment" and that a medical decision "does not represent cruel and unusual punishment"). Allegations of mistaken diagnoses are likewise insufficient to state a claim because even if a lapse in professional judgment occurred, any such failure amounts to mere negligence or malpractice, and not a constitutional violation.[96]   See Harris v.

_____

[95](...continued)
pp. 1-297.   The court has reviewed these records, but has not located a report showing that another x-ray of Taylor's right foot was taken in September of 2020.

[96]According to Dr. Foreman, who is an orthopedic specialist, "Dr. Carmichael's evaluation, treatment and recommendations regarding Mr. Taylor's fracture were well-within the standard of care for orthopedic surgery."   Foreman Affidavit, Exhibit A to Dr. Carmichael's MSJ, Docket Entry No. 31-1, p. 4.   The record does not otherwise support a finding of negligence in this case. Dr. Carmichael notes further that, as a physician employed by UTMB, he is immune from any state law claim of negligence under the Texas Tort Claims Act ("TTCA"), Tex. Civ. Prac. & Rem. Code § 101.106(f). See Dr. Carmichael's MSJ, Docket Entry No. 31, pp. 21-22.   Immunity under the TTCA extends to negligence or medical malpractice claims
(continued...)

Hegmann, 198 F.3d 153, 159 (5th Cir. 1999) (citing Mendoza v. Lynaugh, 989 F.2d 191, 195 (5th Cir. 1993)).

Because Taylor does not demonstrate that Dr. Carmichael denied him adequate medical care with deliberate indifference, he fails to show that a constitutional violation occurred.  Because his claim against Dr. Carmichael is without merit, Taylor's motion for summary judgment will be denied and Dr. Carmichael's motion for summary judgment will be granted.

## IV.   Conclusion and Order

Based on the foregoing, the court **ORDERS** as follows:

1.   Defendants Simmons, Poffinbarger, and Chan's Motion for Judgment on the Pleadings Pursuant to Federal Rule of Civil Procedure 12(c) (Docket Entry No. 21) is **GRANTED.**

2.   Defendant Kelly Carmichael, M.D.'s Motion for Summary Judgment (Docket Entry No. 31) is **GRANTED.**

3.   Taylor's [Motion for] Summary Judgment (Docket Entry No. 28) is **DENIED.**

---

[96](...continued)
against a defendant in his or her individual and official capacity for the actions taken as a full-time health care provider employed by UTMB.  See Franka v. Velasquez, 332 S.W.3d 367, 381-83 (Tex. 2011) see also Denson v. TDCJ-ID, No. 12-02-00099-CV, 2003 WL 21254862, at *16 (Tex. App. - Tyler May 30, 2003, no pet.) (commenting that "[t]he TTCA does not provide for recovery [of damages] against individuals employed by the [State of Texas]," which includes health care providers employed by UTMB) (citing Aguilar v. Chastain, 923 S.W.2d 740, 744 (Tex. App. - Tyler 1996, writ denied)).  To the extent that Taylor attempts to raise any type of state law tort claim that is subject to § 101.106(f), Dr. Carmichael and any other health care provider named as a defendant in this suit are entitled to immunity under the TTCA.

4.    Defendant Kelly Carmichael, M.D.'s Motion to Strike Plaintiff's Supplement to His Motion for Summary Judgment [ECF No. 38] (Docket Entry No. 39) is **GRANTED**.

5.    Taylor's Motion for Objection/Reconsideration (Docket Entry No. 48) is **DENIED**.

6.    This civil action will be dismissed with prejudice.

**The Clerk is directed to provide a copy of this Memorandum Opinion and Order to the parties of record.**

**SIGNED** at Houston, Texas, on this 2nd day of February, 2021.

_____
SIM LAKE
SENIOR UNITED STATES DISTRICT JUDGE

-29-